UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RODNEY LEE PHELPS,

     Plaintiff,

v.                                     Case No. 5:16cv72-MW-HTC

DIANA DUNCAN and
BETH WELCH,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Diana Duncan and Beth Welch's motion for summary judgment (ECF Doc. 53).[1]  The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  After reviewing the parties' submissions and the relevant law, the undersigned recommends that Defendants' motion be GRANTED and summary judgment entered in Defendants' favor.  Specifically, the undersigned finds that Plaintiff has failed to present facts from which a reasonable jury could find that Defendants acted with deliberate

---

[1] Plaintiff responded in opposition to the motion (ECF Doc. 59), and Defendants filed a reply (ECF Doc. 60).

indifference in violation of the Eighth Amendment and further that, even if such facts were present, Defendants would be entitled to qualified immunity.

## I.    Factual Background

In support of their motion, Defendants submitted verified interrogatory responses from Defendants Duncan (ECF Doc. 53-5) and Welch (ECF Doc. 53-3) and the affidavit of Defendant Welch (ECF Doc. 54).   In opposition, Plaintiff submitted his medical records, the affidavit of a former inmate, Shawn Stokes and his own affidavit.   ECF Doc. 59 at 21-37.   The facts below are derived from those submissions as well as Phelps' verified amended complaint (ECF Doc. 6).   *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (noting the court is to "credit the specific facts pled in [a *pro se* plaintiff's] sworn complaint when considering his opposition to summary judgment) (internal marks omitted).

Plaintiff Rodney Phelps ("Phelps"), a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983 (ECF Doc. 1), asserting claims for cruel and unusual punishment under the Eighth Amendment and denial of due process under the Fourteenth Amendment.   Phelps' claims arise out of an incident that occurred on March 11, 2012, when Phelps burned his foot with hot water after slipping into an open drain while working in a prison kitchen.   Phelps names three (3) Defendants in the complaint – Diana Duncan ("Duncan"), Food

Services Director; Raymond Wood ("Wood"),[2] Correctional Officer; and B. Welch ("Welch"), Production Manager, each of whom were employed at the Northwest Florida Reception Center Annex ("NFRCA"), where Phelps was incarcerated and injured.[3]

Phelps claims that on the morning of March 11, 2012, while working to make the morning beverages, he noticed the floor drain in front of the tilt kettle was missing a drain cover. ECF Doc. 53-6 at 23; ECF Doc. 6 at 6. According to Phelps, the cooks often swapped drain covers because there were never enough in their area either and that is what happened that morning. *See* ECF Doc. 53-6 at 23. Phelps asked one of the cooks if he could use one of their drain covers, but the cook said no. *See id*. Thus, Phelps advised Defendant Welch of the missing drain cover. ECF Doc. 53-6 (Phelps Depo.) at 23; ECF Doc. 6 at 6. Welch told him to "just work around the drain as usual," and "be careful," or go to confinement. ECF Doc. 53-6 (Phelps Depo.) at 23; ECF Doc. 6 at 7. Phelps then went to Defendant Woods, who gave him a similar response. ECF Doc. 53-6 (Phelps Depo.) at 24; ECF Doc. 6 at 7. Subsequently, when Phelps returned to make the beverages, he accidentally stepped

---

[2] Wood was dismissed for Phelps' failure to effect service on him. ECF Docs. 36, 40.

[3] Although the incident at issue occurred at NFRCA, Phelps is currently confined at Taylor Correctional Institution Annex.

into the uncovered drain, spilling hot water on his left foot and leg and sustaining first and second degree burns on his left foot. *Id*. at 25; ECF Doc. 6 at 8.

Defendant Welch does not dispute she "was aware that there were a lack of floor drain covers throughout the food services department premises." ECF Doc. 54 at 2. Indeed, the parties agree drain covers were missing throughout the food services area for "long periods of time" and that it was a "known condition." *See id*. at 3; ECF Doc. 6 at 9; ECF Doc. 59 at 4; ECF Doc. 59 at 33. Defendant Welch states in her affidavit that she reported the issue to maintenance and "often reminded Plaintiff and other inmates" "to be careful." *See* ECF Doc. 54 at 3. Welch contends she had no control over the lack of floor drains other than to report the issue to maintenance. *See id.* These facts are not disputed by Phelps. Despite the fact that the exposed drains have been a known and persistent issue, Defendant Welch states she is not aware of any other incident involving the exposed drains. ECF Doc. 53-3 at 3.

It is undisputed Defendant Duncan was not present at the time of the incident. Nonetheless, Phelps has sued Duncan because he contends she was aware of the exposed drains. Specifically, Phelps contends that he and other inmates advised her of same on numerous occasions. ECF Doc. 6 at 9. Additionally, he contends Defendant Duncan is seen on video making "daily inspections" of the food services area. *Id.* Phelps further contends he advised Defendant Duncan he had slipped and

fallen into the exposed floor drains on other occasions and Duncan's response was that "she was aware of the situation," "she [had] informed the maintenance department" and "just be careful or go to confinement."  ECF Doc. 6 at 9.

Defendant Duncan does not dispute she was aware of the exposed drains. Instead, in response to interrogatories, she states she does not remember whether she was made aware of this fact and in Defendants' motion, they state that "Duncan may not have been aware" of the exposed drains.[4]  ECF Doc. 53-5 at 3; ECF Doc. 53 at 14.  Defendant Duncan also contends that drain covers were under the lock and key of maintenance, that maintenance was responsible for ordering drain covers and ensuring there were a sufficient number of covers.  *See id*.  She does not dispute she conducted visual inspections of the food services area each day that she was on duty. *See id*. at 4.

## II.   Legal Analysis

### A.   Summary Judgment Standard

"Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Jinks v. Owens*, 517 F. App'x 913, 914 (11th Cir. 2013) (citing Fed.

---

[4] For purposes of the summary judgment motion, the undersigned finds, based on Duncan's response, that no genuine issue of material fact exists with regard to the fact that Duncan had knowledge of the exposed drains.

R. Civ. P. 56(a)).  "Once the party moving for summary judgment discharges its initial responsibility of informing the district court of the basis for its motion, the burden shifts to the non-moving party to come forward with relevant evidence beyond the pleadings showing that there is a genuine issue for trial."  *Id.* at 914-15 (internal marks omitted).  "If the non-moving party fails to make a sufficient showing to establish an essential element of its case, summary judgment is appropriate."  *Id.*  "Mere conclusions and unsupported factual allegations are insufficient to defeat a summary judgment motion."  *Id.*  "Similarly, [a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  *Id.* (internal marks omitted).

### B.    Plaintiff's Eighth Amendment Claim[5]

The gravamen of Phelps' complaint is that the Defendants violated his rights under the Eighth Amendment by displaying a "deliberate indifference" to his safety when they required him to continue to work around open floor drains.  The Eighth Amendment imposes an obligation on prison officials to "take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal marks and citations omitted).  A prison official violates the Eighth Amendment when his "act or omission . . . result[s] in the denial of the minimal

---

[5] Plaintiff initially asserted both an Eighth Amendment and Fourteenth Amendment claim against the Defendants.  The Court dismissed Plaintiff's Fourteenth Amendment claim.  ECF Doc. 11.

civilized measure of life's necessities." *Id.* (internal marks and citations omitted). A mere negligent failure to protect an inmate does not state a claim under § 1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

To survive summary judgment, Phelps must show (1) a substantial risk of harm; (2) the Defendants' deliberate indifference to that risk; and (3) causation. *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### 1. Substantial Risk of Serious Harm

Whether an unsafe condition results in a substantial risk of harm is determined based on an objective standard. *See Farmer*, 511 U.S. at 834. A condition poses a substantial risk of serious harm if it is "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). There must be a strong likelihood of injury as opposed to a mere possibility. *See Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). Similarly, the risk must be actual, rather than potential or speculative. *See Carter v. Galloway*, 352 F.3d 1346, 1323 (11th Cir. 2003).

The presence of an open drain in the kitchen area does not create a substantial risk of serious harm. The existence of open drains in the food services area had been an on-going condition known to prisoners and staff for a long time. Yet, neither Defendant was aware of any other incidents or injuries resulting from the open drains. Phelps, also, failed to submit any evidence regarding other injuries or

incidents from the open drains. Both his affidavit and the affidavit of Stokes confirm it was a condition inmates had to work around and did work around – without injury, prior to Phelps' accident. While Phelps contends he had fallen on other occasions and reported those to Duncan, there is no evidence he suffered any significant injuries from those other falls or that he sought treatment for any injuries from those falls.[6] The lack of other incidents combined with the open and obvious nature of an open drain negates a finding of substantial risk of serious harm. *See Farmer*, 511 U.S. at 842-43 ("If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence would permit at trier of fact to find that the defendant-official had knowledge of the risk."). At best, the condition in the food services area posed a possibility for injury, but such a possibility is insufficient to meet the objective prong of Phelps' Eighth Amendment claim. *See Kreidler v. Thomas*, 2009 WL 3624378, *5 (M.D. Ala. 2009) ("mere

---

[6] It is unclear whether Phelps' other falls occurred the morning of the incident or at prior times. *Compare* ECF Doc. 53-6 at 22 ("that morning several times before - - I have slipped trying to make the morning beverages") *with* ECF Doc. 6 at 9 ("Plaintiff also advised Defendant Duncan on the times that he has slipped and fell into the exposed drains.").

possibility Kreidler could be injured by a falling window is not enough to establish deliberate indifference").

2.   Deliberate Indifference

The second element of Phelps' claim is subjective and requires "a prison official [to] have a sufficiently culpable state of mind." *Id.* (internal marks omitted). In prison safety cases, that culpable state of mind is the equivalent of criminal recklessness.  *See Farmer*, 511 U.S. at 837; *see Barrand v. Donahue*, 2006 WL 2982051, at *2 (N.D. Ind. Oct. 16, 2006) (criminal recklessness is shown by "something approaching a total unconcern for the plaintiff's welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm").  "[T]here must be at least some allegation of a conscious or callous indifference to [the] prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (internal marks omitted).

Deliberate indifference requires (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk and (3) conduct that amounts to more than mere negligence. *Ray v. Foltz*, 370 F.3d 1079, 1083 (11th Cir. 2004).  The prison official must be subjectively aware of the risk, *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003), meaning he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Whether an officer was aware of a risk of

serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer. *Id.* at 842-43. However, an inference may not be compelled and the prison official must be permitted to show he was actually unaware of the risk in question. *See Beers-Capital v. Whetzel*, 256 F.3d 120, 132 (3rd Cir. 2001). Furthermore, even if a prison official is shown to have been actually aware of a risk to a prisoner, the official may nonetheless avoid liability if he responded reasonably. *See id.*

Phelps has failed to present any evidence that Defendants had actual knowledge of a substantial risk Phelps could suffer a serious injury from the open drains. As stated above, the existence of a missing drain cover, alone, does not constitute an objective substantial risk of harm, particularly when no other injuries were reported prior to Phelps' injury. Thus, there are no facts from which the Defendants could infer that a substantial risk of injury exists. Moreover, even if such facts existed, Defendants did not make any such inference. Welch states, for example, she never required Phelps to work in an environment which she considered to be unsafe or blatantly dangerous. She also states, "I tried my best each time food preparation occurred to make sure that Plaintiff and the other inmates were working in a safe manner." ECF Doc. 54 at 3. Additionally, as the Supreme Court has held, a prison official's failure to alleviate a significant risk that he should have perceived,

but did not, "while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38.

Phelps relies on the fact that Defendants were aware of the existence of the open drains to support his Eighth Amendment claim, but that knowledge alone is insufficient to show deliberate indifference. *See Howard v. Hedgpeth*, 2011 WL 386980, at *11 (E.D. Cal. Feb. 3, 2011) ("not every deviation from ideally safe conditions amounts to a constitutional violation") (quoting *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985)).  Indeed, Phelps acknowledges that Defendants told him to "work around the drains" and "be careful" when working around the open drains.  Their cautionary instructions to him clearly negate a finding of culpability or criminal recklessness. *See Barrand*, 2006 WL 2982051, at *2 ("[d]eliberate indifference is comparable to criminal recklessness, and is shown 'by something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm'").

Additionally, Phelps does not dispute that Defendants reported the issue to maintenance for correction.  Defendants' response was reasonable and, thus, was not deliberately indifferent. *See Doe v. Georgia Dept. of Corr.*, 248 F. App'x 67, 71 (11th Cir. 2007) ("no Eighth Amendment violation is shown unless the official's response was objectively unreasonable").  Viewing the evidence presented in the light most favorable to Phelps, at most, Defendants may have been negligent, but for

an Eighth Amendment claim to survive summary judgment there must be more than a showing of ordinary lack of due care for a prisoner's interests or safety.[7]  *See Kreidler*, 2009 WL 3624378, at \*5; *Innis v. Wilson*, 334 F. App'x 454, 457 (3rd Cir. 2009) (dismissing Eighth Amendment claim against maintenance supervisors for failing to fix and repair a table that collapsed causing injury to the plaintiff and stating "[m]ere negligence claims do not constitute 'deliberate indifference'").

Phelps relies heavily on *Gill v. Mooney*, a case from the Second Circuit, in his opposition.  *Gill*, however, is inapposite because it was decided on a motion to dismiss.  *See Gill v. Mooney*, 824 F.2d 192 (2nd Cir. 1997).  The court in *Gill* found that Gill's allegations that Mooney acted with deliberate indifference when he ordered Gill to continue working on an unsafe ladder were sufficient to survive a motion to dismiss because the "allegations against Mooney 'involve more than ordinary lack of due care for the prisoner's interests or safety.'"  *Id*. at 194.  Indeed, here, Phelps' allegations also made it past a motion to dismiss.  Beyond allegations, however, the undisputed facts presented do not pass the exacting standards to establish a deliberate indifference claim.  Additionally, the facts in *Gill* involved a defective ladder that the inmate was required to use and could not work around.

---

[7] *See also Tunstall v. Rowe*, 478 F. Supp. 87, 89 (N.D. Ill. 1979) (holding that no Eighth Amendment violation occurred when prisoner fell down on greasy steps because the injury was not the result of a condition of imprisonment and was no different in nature to an injury which could occur to any member of the general population).

Here, Phelps (and other inmates) had been working around the open drains without incident for some time. *See Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996) (distinguishing *Gill*, where no conditions existed which rendered inmate unable to provide for his own safety or rendered him unable to perceive the defective condition).

### 3.    Causation

Finally, Phelps has failed to produce any evidence to show that Defendants' actions or inactions caused his injuries.  In her affidavit, Welch states that she "could not control the lack of floor drains other than to report the issue to maintenance," which she did.  *See* ECF Doc. 54 at 3.  Phelps has presented no evidence to the contrary.  Thus, even if a substantial risk of harm existed, Welch would still be entitled to summary judgment on the additional ground that there is no showing that she had any responsibility or could control the conditions in the food services area. *See LaMarca v. Turner*, 995 F.2d 1526, 1535-36 (11th Cir. 1993) (internal citation omitted) ("Because the Eighth Amendment requires a subjective standard, to demonstrate an official's deliberate indifference, a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.' Thus, if an official attempts to remedy a constitutionally deficient prison condition, but fails in that endeavor, he

cannot be deliberately indifferent unless he knows of, but disregards, an appropriate and sufficient alternative."). Welch's inability to control Phelps' working conditions is additional support for a finding in her favor on Phelps' deliberate indifference claim.[8] *See Bugge v. Roberts*, 430 F. App'x 753, 760 (11th Cir. 2011) (granting summary judgment for defendants "because Bugge presented no evidence that any of the defendants, except for Warden Robertson, had any responsibility for the conditions of the CSP, or could take reasonable steps to lessen the substantial risk of serious harm that existed there").

The same is true for Defendant Duncan. Duncan states in verified responses to interrogatories that the drain covers were "under lock and key and they were under the supervision of the food officer assigned to food service." ECF Doc. 53-5 at 3. She further states that maintenance was responsible for ordering the covers and ensuring there was a sufficient number of them for the area. *Id.* Phelps has presented no facts to the contrary. Instead, in Phelps' opposition, he quotes from Florida Department of Corrections Policy provision 33-204.002, subsection 5, and suggests it imposes a duty on the Food Services Director to prepare a schedule of preventive maintenance of the physical plant and equipment, to include replacement parts. ECF

---

[8] Defendant Welch also states in her affidavit that she "did not have any authority to discipline or otherwise manage inmates from a security perspective." ECF Doc. 54 at 3. Phelps also does not dispute this fact. Thus, there is no showing that Defendant Welch had the authority to force or compel Phelps to work or go to confinement.

Doc. 59 at 39.    Subsection 5 of 33-204.002, however, defines "food services director" simply as the person in charge of food service operations at a facility and who is under the direct supervision of the assistant warden of operations.    There is no subsection 7 in 204.002, addressing equipment maintenance, as cited by Phelps.

While it is unfortunate that Phelps suffered an injury to his foot, the record is completely devoid of evidence that Defendants acted with deliberate indifference. *See e.g., Howard*, 2011 WL 386982, at *1 (granting defendants' motion for summary judgment on Eighth Amendment claim brought by inmate who was injured when a piece of loose metal on the door casing to the walk-in vegetable freeze severely cut his left hand).

## C.    Eleventh Amendment Immunity

The Defendants also argue they are entitled to summary judgment to the extent they are being sued in their official capacities because they are immune from liability under the Eleventh Amendment.    Phelps' amended complaint states that the Defendants are being sued in their individual capacities.    Regardless, out of an abundance of caution, the undersigned will address this argument.

The Supreme Court has recognized that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).    And, it is well settled that absent waiver or express congressional abrogation, neither of

which is present in this case, the Eleventh Amendment prohibits a suit brought by a private individual against a state in federal court. *Fed. Mar. Comm'n v. S.C. State Ports Author.*, 535 U.S. 743 (2002); *Ky. v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Gamble v. Fla. Dep't of Health and Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986). Phelps' claims against the Defendants, to the extent they are alleged in their official capacities, thus, fail as a matter of law.

The Defendants do not argue they are immune from liability from claims alleged against them in their individual capacities. Nonetheless, the undersigned will also address that argument because it is addressed by Phelps in his opposition.

As Phelps correctly points out, when a government official is sued in his individual capacity, he may avail himself of qualified immunity. The doctrine of qualified immunity shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730 (2002); *Conn v. Gabbert*, 526 U.S. 286 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)); *Powell v. Ga. Dep't of Human Resources*, 114 F.3d 1074 (11th Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability attaches only if the contours of the right allegedly violated are

sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott*, 182 F.3d at 1260 (citing *United States v. Lanier*, 520 U.S. 259, 270 (1997)).

In order to benefit from qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff." *Id.* at 1194. There is no dispute here that Defendants were acting within the scope of their discretionary authority when they told Phelps to be careful and go back to work. Thus, the burden is on Phelps to show (1) a constitutional right has been violated on the facts alleged; and (2) the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). The Court may exercise its sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As set forth above, the undersigned finds that Defendants have not violated Phelps' Eighth Amendment rights. Because Phelps cannot meet his burden under the first prong of the qualified immunity analysis, the Defendants are entitled to qualified immunity. *See, e.g., Pearson*, 555 U.S. at 236-38 (the court may grant qualified immunity if the plaintiff fails to carry his burden on either of the two

prongs). Nonetheless, the undersigned will also address the second prong of the qualified immunity test because it is addressed significantly in Phelps' opposition.

The purpose of the second prong is to give defendants "fair warning" that their actions are unconstitutional. *Hope,* 536 U.S. at 741. Where there is no clearly established law that certain conduct constitutes a constitutional violation, a defendant cannot be on notice that such condition is unlawful. *See Rodis v. City & Cty. Of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009). In the Eleventh Circuit, "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4. (11th Cir. 1997); *see McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) ("We have held that decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law.").

As mentioned above, it is Phelps' burden to show Defendants have violated a constitutional right that was clearly established. Even assuming Phelps can show a constitutional right has been violated, Phelps fails to point to any decision by the U.S. Supreme Court, Eleventh Circuit or Florida Supreme Court that would be sufficient to put Defendants on notice that telling him to be careful and continue to

work around an open drain was unconstitutional. Instead, Phelps relies on cases from the Ninth Circuit and the *Gill* case, already distinguished above.

The primary case Phelps relies on is *Osolinski v. Kane*, 92 F.3d 934 (9th Cir. 1996). In *Osolinski*, the Ninth Circuit considered whether the lower court erred in denying qualified immunity with regard to a prisoner's claim of cruel and unusual punishment stemming from an injury sustained when a malfunctioning oven door fell off its hinges in the family vising room of the facility in which the prisoner was housed, causing second degree burns. *See id*. at 935-36. After considering cases from the Supreme Court, the Ninth Circuit and other circuits, the court concluded that "no cases in this circuit clearly established that a single defective device, without any other conditions contributing to the threat to an inmates' safety, created an objectively insufficiently humane condition violative of the Eighth Amendment." *Id*. at 938. Thus, the court *reversed* the denial of summary judgment in favor defendants, finding that they were entitled to qualified immunity. *See id.* at 939.

Accordingly, *Osolinski* supports a finding of qualified immunity in this instance. Similar to *Osolinksi*, there is no relevant case law finding a constitutional violation under similar factual circumstances, which would make it clear to reasonable officers (*i.e.*, the Defendants) that their conduct violated the Eighth

Amendment. [9]  *See Saucier*, 533 U.S. at 202.  Phelps, therefore, also cannot meet the second prong of the qualified immunity test.  *See also, Howard*, 2011 WL 386980, at * 12 (citing *Osolinski* and stating "Defendants are entitled to qualified immunity because reasonable prison officials could believe their conduct in continuing to deploy prison kitchen workers to move pallets of vegetables in and out of the walk-in freezer despite the presence of a damaged portion of threshold casing was lawful").

### D.    Sovereign Immunity

Defendants also move for summary judgment as to Phelps' claims to the extent they sound in tort, on the basis of sovereign immunity.  Phelps does not address this argument in his opposition, other than to dispute that his § 1983 claims are barred by the 4-year statute of limitations.  The undersigned agrees that Phelps' claims are not barred by the statute of limitations, but judgment is nonetheless appropriate for the Defendants on other grounds set forth herein.

The undersigned does not read Phelps' claims, even when read liberally, to state a claim under common law negligence.  Nonetheless, the undersigned also finds that to the extent Phelps seeks to assert state law negligence claims against the Defendants, Defendants are immune under Fla. Stat. § 768.28(9).  There is no

---

[9] The *Osolinski* court also distinguished the facts before it from the facts in *Gil* and in *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985), another Ninth Circuit case relied upon by Phelps.

evidence Defendants acted willfully or with malice, and to the contrary, the undisputed evidence shows Defendants reported the missing drain covers to maintenance and advised Phelps to be careful.

Accordingly, it is respectfully RECOMMENDED:

1.     That Defendants Diana Duncan and Beth Welch's motion for summary judgment (ECF Doc. 53) be GRANTED and Plaintiff's claims DISMISSED.

2.     That the clerk be directed to enter judgment in favor of the Defendants and close the file.

At Pensacola, Florida, this 10th day of June, 2019.


*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**




**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.**